## Commonwealth v. Costa and Tucci.

*Criminal law—Murder—Accessory after the fact—Knowledge of felony.*

1. An accessory after the fact is one who, knowing a felony to have been committed by another, receives, relieves, comforts or assists the felon, or in any manner aids him to escape arrest or punishment.

2. In order to fix the guilt of a party charged as accessory after the fact, it is essential that a felony has been committed, and that it is complete. Aiding a guilty person to escape after he has given another a mortal wound, but before death ensues, does not make the person rendering such aid an accessory after the fact, since the homicide is not consummated until death occurs.

3. Another requisite to the conviction of one as accessory after the fact is that he must know of the felony having been committed, and that the person aided is the party who committed it, and intend to shield him from the law.

Charge of the court on motion for binding instructions for acquittal of defendants. O. and T. Fayette Co., Sept. T., 1922, No. 14.

*N. W. Rosenberg*, Assistant District Attorney, for Commonwealth.

*W. C. McKean* and *Brownfield & McDaniel*, for defendants.

VAN SWEARINGEN, P. J., Sept. 22, 1922.—Gentlemen of the jury: The two defendants are indicted for being accessories after the fact to the crime of murder. The Commonwealth having closed its case, counsel for the defendants move the court to instruct you that there can be no conviction of the defendants under the evidence, and, therefore, that you should render a verdict that the defendants are not guilty.

The evidence shows that late in the night of Aug. 5, 1922, at Keifertown, in this county, at the home of Joe Swine, a colored man, a crap game was in progress, and that colored men, white men and colored women were present. Both colored men and white men were participating in the crap game. The only light in the room where the game was being played was an oil lamp, which had been set on the floor, in front of which the dice were being thrown. Among those present were Joe Costa and Larry Tucci, the two defendants; Kirk Loman, the man who lost his life; and Mike Acquad, the man whom the Commonwealth alleges killed Loman.

2 D. & C.

Commonwealth *v.* Costa and Tucci.

There is evidence that while the crap game was in progress a revolver shot occurred, the light went out, and everybody rushed from the house. The evidence shows that Loman was the first to leave the house, staggering down the outside steps and falling in the street, and that when he was picked up a few minutes later, a wound was discovered where a bullet had entered the centre of his chest, passing entirely through his body and emerging from his back. He died later in the night, and a *post-mortem* examination of the body held the next day showed death to have been caused by an internal hemorrhage, produced by the bullet perforating the blood vessels supplying the lungs. There is evidence that, at the time the shot occurred, Loman was sitting on a trunk, leaning forward, shooting the dice on the floor. Two witnesses have testified that they saw Acquad shoot Loman, and that the light went out immediately and they did not see anything more. None of the other witnesses who have testified pretend to know how the shot occurred. On cross-examination of the Commonwealth's witnesses, it was developed that when Loman first came to the Swine home, and while engaged in shooting the dice, he carried a revolver in the bosom of his shirt, the handle of which was visible, protruding from his shirt front. When the officers examined the room the next day they found no bullet hole in the wall back of where Loman had been sitting on the trunk, but did find a bullet hole in the ceiling, and also found a bullet which had passed through the ceiling and struck a board overhead and dropped back on to the ceiling plastering, from all of which it is suggested that when Loman was leaning forward when sitting on the trunk, throwing the dice, his revolver may have fallen from his shirt on to the floor and been discharged, the concussion of the shot putting out the light, the bullet going through Loman's body and into the ceiling. There is no evidence that any revolver was found about the premises, or in the possession of Loman, or upon the person of anybody else, following the shot mentioned. The two defendants and Acquad had come to the Swine home in an automobile, which they left standing in the street, near the front of the house, and immediately after Loman was shot, the defendants and Acquad sprang into the automobile and drove rapidly away, and Acquad never yet has been apprehended.

It is charged in the indictment that Acquad killed Loman, and that the defendants "did receive, harbor, maintain, help, aid and assist" Acquad in making his escape; that is, that the defendants were accessories after the fact to the murder of Loman by Acquad.

An accessory after the fact is one who, knowing a felony to have been committed by another, receives, relieves, comforts or assists the felon, or in any manner aids him to escape arrest or punishment. In order to fix the guilt of a party charged as accessory after the fact, it is essential that a felony has been committed and that it is complete. Aiding a guilty person to escape after he has given another a mortal wound, but before death ensues, does not make the person rendering such aid an accessory after the fact, since the homicide is not consummated until death occurs. Another requisite to the conviction of one as accessory after the fact is that he must know of the felony having been committed, and that the person aided is the party who committed it, and intend to shield him from the law.

Even if it be assumed, for the purposes of this case, that Acquad fired the shot that killed Loman, it appears clearly from the evidence offered by the Commonwealth that Loman was not yet dead at the time the defendants took Acquad away with them in the automobile, and, therefore, that at the time the defendants rendered aid to Acquad, in taking him away from the scene of the trouble, the felony was not complete, because Loman was not yet dead.

DISTRICT AND COUNTY REPORTS.

Commonwealth v. Costa and Tucci.

Nor has any evidence been introduced to show that the defendants knew Acquad shot Loman, if he did shoot him, or that a felony of any kind had been committed by Acquad.

Courts and juries alike are bound by the law, and we are compelled to say to you that there has been no evidence offered on the part of the Commonwealth on which a verdict of guilty against these defendants can be sustained.

We instruct you, therefore, that you should return a verdict that the defendants are not guilty. From Luke H. Frasher, Uniontown, Pa.